IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THI OF NEW MEXICO AT VALLE NORTE,
LLC d/b/a Valle Norte Caring Center,

      Plaintiff,

v.                                                                                                              No. 10-cv-873 WJ/LFG

DUSTI HARVEY, FELIZ RAEL, and
HARVEY LAW FIRM, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (Doc. 27). Defendants move for summary judgment on all claims in the complaint. Plaintiff opposes the motion. Having considered the parties' submissions and the applicable law, the Court finds that the motion is well taken and shall be granted.

**BACKGROUND**

**I.     Procedural History**

The complaint in this case was filed on September 20, 2010 (Doc. 1). The Court has jurisdiction over this lawsuit by virtue of the parties' diverse citizenship. The complaint alleges that Defendants Dusti Harvey, Harvey Law Firm, LLC, and Feliz Rael (collectively, "HLF") initiated a lawsuit against THI without probable cause in June 2007.[1]

Defendants filed the instant motion for summary judgment on February 16, 2011, seeking summary judgment in their favor on all counts of the complaint. The parties then stipulated to

---

[1] The legal term "probable cause" in this opinion means probable cause in the context of the tort of malicious abuse of process.

three extensions of time for Plaintiff to file a response brief (Docs. 28, 35, & 36). Meanwhile, discovery was ongoing. Plaintiff's response brief, filed May 31, 2011, therefore cites to a factual record which was not available to Defendants when the motion was filed. Defendants' reply brief makes use of the factual record, and Plaintiff therefore requested and received leave to file a surreply (Docs. 90 & 91) to respond to Defendants' new evidence and arguments. The surreply was timely filed on July 25, 2011.

Also currently pending before the Court is Defendants' motion to amend their answer to assert a counterclaim and a third-party complaint, filed July 25, 2011 (Doc. 95). This motion is not fully briefed, because the time to file a response has not yet expired.

## II.     Factual History

Plaintiff THI of New Mexico at Valle Norte, LLC ("THI"), a limited liability company whose sole member is THI of New Mexico, LLC, operated the Valle Norte Caring Center ("Valle Norte") in Albuquerque, New Mexico until 2008, when the facility closed.[2] For the purposes of this motion, the facts in this case are as follows.[3] On June 18, 2007, HLF filed a lawsuit against THI on behalf of James R. Tracy ("Tracy lawsuit"), a patient at Valle Norte in April of 2005. At the time of the filing of the Tracy lawsuit, Mr. Tracy represented to HLF that he had suffered priaprism, had undergone a delay in receiving treatment by the nursing home,

---

[2] Plaintiff THI of New Mexico at Valle Norte, LLC, its corporate members, and the Valle Norte Caring Center will all be referred to as "THI" in this opinion, as the distinctions between these entities are not legally relevant here.

[3] The facts are taken from Defendants' motion and Plaintiff's response in opposition to the motion. Defendants' facts are undisputed except where otherwise noticed, and Plaintiff's facts are undisputed by Defendants' reply brief.

and had experienced an amputation or auto-amputation of his penis.[4] The lawsuit therefore alleged that, while under the care of THI, Mr. Tracy suffered "injuries and harm," including but not limited to a loss of his penis from severe priapism, as a result of THI's negligent conduct and physical and mental abuse. Compl. ¶¶ 22-25, *Tracy v. THI of N.M. at Valle Norte, LLC*, No. D-0101-CV-2007-01385 (N.M. First Judicial Dist. Ct. filed June 18, 2007) (Doc. 27-1 at 6-7).[5] However, after his treatment for priapism, Mr. Tracy had been seen by a urologist, Dr. Michael Milroy, who issued a report indicating that Mr. Tracy had not suffered an amputation or auto-amputation of his penis after all.

Prior to filing the lawsuit, HLF hired a nurse, Karen Rose, as an expert witness to evaluate the negligence claims against THI. Essentially, Ms. Rose indicated there were areas where the care provided by the nursing home could have been substandard, and identified questions that raised red flags as to whether the substandard care resulted in injury to Mr. Tracy's penis. Roughly the first seven months of the Tracy lawsuit were spent litigating questions of personal jurisdiction raised by THI, and formal interrogatories were not served by THI on Mr. Tracy until March of 2008.

In April of 2008, HLF obtained two photographs of Mr. Tracy's penis and provided one of them to THI which partially supported an allegation that Mr. Tracy's penis was nothing but a

---

[4] THI disputes this fact by pointing out that the evidence reflects that Mr. Tracy's story shifted over the course of time. Nonetheless, such evidence only supports the conclusion that Mr. Tracy's story may not have been credible, and does not actually dispute the fact that Mr. Tracy represented to HLF that he had suffered the loss of his penis.

[5] While THI attempts to dispute this fact by arguing that the lawsuit alleged only one personal injury – i.e., the loss of Mr. Tracy's penis – the fact that the complaint broadly asserted a general personal injury not limited to the loss of the penis is clear from the language quoted above.

disfigured mass of tissue. At that time, THI still did not have the complete medical records for Mr. Tracy that were in the possession of HLF. At a mediation conference held in April, HLF was still asking for a settlement in the amount of $850,000, which encompassed damages for Mr. Tracy's supposedly amputated penis. Around this time, the parties became aware that Mr. Tracy was dying of an unrelated medical condition, and in June of 2008, the state district court granted the firm's motion to withdraw from representation. Mr. Tracy voluntarily dismissed his lawsuit in July, and in August the district court granted THI's motion for summary judgment. Meanwhile, Mr. Tracy died in July of 2008.

## LEGAL STANDARD

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252. Analysis of a summary judgment motion requires that the court consider all the evidence in the light most favorable to the nonmoving party. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

**DISCUSSION**

THI filed the present lawsuit against HLF alleging that the firm intentionally misrepresented the facts in the Tracy lawsuit and filed the case without probable cause to do so. THI brings claims for malicious abuse of process (Count I); attorney deceit (Count II); and civil conspiracy (Count III). HLF moves for summary judgment on all claims, arguing that it was entitled to rely on its client's factual representations, and that even if the allegation of the amputated penis was unsupported, the Tracy lawsuit – viewed as a whole – was supported by probable cause to reasonably believe the nursing home had been negligent. The Court agrees that on the undisputed facts, HLF is entitled to summary judgment in its favor.

**I.     Malicious Abuse of Process**

The tort of malicious abuse of process recognizes that the legal process may be invoked or used in a wrongful manner, causing harm to the party forced to bear the consequences of the wrongful lawsuit. But "the malicious abuse of process tort is disfavored in the law because of the potential chilling effect on the right of access to the courts." *Fleetwood Retail Corp. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007) (internal quotation marks omitted). The malicious abuse of process tort "must be construed narrowly in favor of the right of access to the courts." *Id.* "[M]aliciously filing a complaint [i]s insufficient to state a malicious abuse of process claim unless it was done without probable cause or was accompanied by some subsequent abuse of process." *Durham v. Guest*, 204 P.3d 19, 25 (N.M. 2009). The elements of this tort are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." The first element, an improper use of process, may be shown several different ways. First, a plaintiff may satisfy this element by showing that a complaint was filed without probable

5

cause. *Id.* Additionally, a plaintiff may demonstrate a misuse of procedural devices such as discovery, subpoenas, or attachments, or an irregularity or impropriety in the proceedings suggesting extortion, delay, or harassment. *Id.*

The parties disagree on whether there was any improper use of process in the Tracy lawsuit. THI contends, first, that HLF filed the Tracy lawsuit without probable cause, and second, that the firm abused the legal process in an effort to extort an improper settlement. HLF argues in response that probable cause existed to file a negligence action against THI, and that the settlement negotiations are insufficient evidence to show extortion in the Tracy lawsuit. The Court will address each of these arguments in turn.

### A.   Probable Cause

"Probable cause in the malicious abuse of process context is defined as a reasonable belief . . . that a claim can be established to the satisfaction of a court or jury." *Fleetwood Retail Corp.*, 164 P.3d at 35 (internal quotation marks omitted). This belief must be "founded on known facts established after a reasonable pre-filing investigation," and the "lack of probable cause must be manifest." *Id.* (internal quotation marks omitted). Probable cause is a question of law to be decided by the trial judge. *Id.* Crucially for the purposes of the present case, "lack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety." *Id.* at 37.

Here, THI focuses primarily on the allegation that Mr. Tracy "lost" his penis – in other words, that he suffered an auto-amputation of his penis – in order to demonstrate that the Tracy lawsuit lacked probable cause. THI points out discrepancies in Mr. Tracy's story and the lack of any medical records supporting his claim of an auto-amputated penis to show that no reasonable pre-filing investigation was done. As HLF points out, however, this is an improper focus on one

particular allegation in the lawsuit to the exclusion of the other claims. THI partly acknowledges this problem by arguing that the only damage allegation in the complaint was the amputated penis. If this argument were correct, the complaint as a whole might not encompass more than the "amputated penis" allegation. However, as already explained above, the complaint clearly asserts a claim for negligence and general personal injury:

> While in the care of Defendants, Mr. Tracy suffered injuries and harm including, but not limited to, the following:
> a. severe delay in treatment for priapism resulting in a loss of his penis;
> b. failure to timely monitor penile wound for signs of infection;
> c. failure to timely complete dressing change of his Percutaneously Inserted Central Catheter;
> d. pain and suffering;
> e. mental anguish; and
> f. humiliation.

Compl. ¶¶ 23, *Tracy*, No. D-0101-CV-2007-01385 (Doc. 27-1 at 6). Clearly, the complaint could have been better drafted, but THI was on notice that it was being sued for general personal injury stemming from a delay in treatment for priapism.

The undisputed facts show that the firm's pre-filing investigation revealed that: Mr. Tracy had an erection lasting for longer than four hours by the time the nursing home provided him with emergency medical care; that the nursing home apparently had not done any investigation into how long the erection had lasted when the problem was discovered; and that when Mr. Tracy returned from the hospital, the nursing home staff did not assist in his recovery by assigning a physician's assistant to monitor his condition or to change his bandages. Certainly, there was some damage that had occurred to the tissue of Mr. Tracy's penis resulting in a loss of some or all function of the organ. These facts are enough to allege a negligence claim against Valle Norte.

This pre-filing investigation into Valle Norte's negligence distinguishes this case from

the case cited by THI, *Resource Associates Grant Writing & Evaluation Services, LLC v. Maberry*, No. 08cv0552 JB/LAM, 2009 WL 1232181 (D.N.M. Apr. 28, 2009). The issue in *Maberry* was whether a consultant, Maberry, had violated a non-compete clause in her consulting agreement with Resource Associates, a grant-writing firm. Resource Associates had conducted a pre-filing investigation that revealed that Maberry's website listed as her own clients a number of the firm's clients. *Id.* at *7-8. Resource Associates concluded that Maberry had violated the consulting agreement. However, as the court found, the agreement only prevented Maberry from "enticing" away the firm's clients; the clients were permitted to approach Maberry on their own. *Id.* at *8. The court concluded that "the knowledge that Maberry shared some clients and providers with Resource Associates was not necessarily grounds to bring a lawsuit." *Id.* In sum, the evidence revealed by the pre-filing investigation was irrelevant to the primary issue of whether Maberry had enticed clients away from Resource Associates. However, as previously noted, the nurse-consultant's report obtained by HLF outlined the direct evidence of negligence in the nursing home. THI's focus on the "amputated penis" allegation obscures the fact that HLF obtained some evidence supporting a preliminary showing that the nursing home was negligent and that Mr. Tracy suffered damages as a result of the substandard care.

      THI additionally argues that HLF lacked probable cause to file the Tracy lawsuit because Mr. Tracy suffered, at most, impotence, and because no witness attributed his impotence to Valle Norte's care. THI focuses on evidence that was developed after the filing of the complaint, and neglects to examine whether the pre-filing evidence, such as the nurse's report described above, offered enough evidence to conclude there was probable cause to believe THI was negligent in its care of Mr. Tracy. In addition, THI also suggests that the fact that HLF dropped this lawsuit

after the "amputated penis" allegation was dropped is conclusive evidence that HLF did not believe the lawsuit was supported by probable cause without the "amputated penis" allegation. This argument similarly misses the mark: whether or not HLF would have devoted its resources to litigating a particular case has no bearing on whether there was probable cause to believe THI violated the law. HLF's subjective view of their own lawsuit does not affect this Court's legal analysis.

### B.     Procedural Impropriety

THI argues that procedural impropriety can be shown in the Tracy lawsuit due to the knowingly false allegation made by HLF that Mr. Tracy had suffered an amputation of his penis, and also the settlement demand made in April 2008 which encompassed an amount meant to compensate Mr. Tracy for the loss of his penis.

As THI points out, "[c]omplaints that assert a *multitude* of unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim." *Fleetwood Retail Corp.*, 164 P.3d at 38 (emphasis added). This scenario is, however, distinguishable from the present case because HLF is not alleged to have brought a multitude of unfounded claims – only one. THI's arguments do not go beyond the "amputated penis" accusation, and therefore this case does not fall within the type of complaint described as procedurally improper in *Fleetwood Retail Corp.*

Next, THI essentially argues that procedural impropriety was present in the settlement negotiations because HLF was still trying to seek damages for the "amputated penis" at the

9

mediation conference of April 2008.[6] But "settlement negotiations, without evidence of extortion or other fraudulent behavior, cannot give rise to a procedural impropriety sufficient to meet the second element of a MAP [malicious abuse of process] claim." *Guest v. Berardinelli*, 195 P.3d 353, 362 (N.M. Ct. App. 2008). THI argues that HLF made several misrepresentations and withheld information during the course of the lawsuit, but this behavior amounts to neither extortion nor fraud.

Black's Law Dictionary indicates that "extortion" involves "obtaining something or compelling some action by illegal means, as by force or coercion." Black's Law Dictionary 664 (Brian Garner ed., 9th ed. 2009). Even assuming that HLF deliberately misrepresented information to THI's counsel during settlement negotiations, and continued pursuing damages for the "amputated penis" when HLF knew that the penis had not been amputated, this is not enough to show force or coercion. An unsupported settlement demand, on its own, cannot constitute "extortion" where a civil litigant is free to decline to pay such a settlement amount without more evidence from the other party.

Similarly, fraud has not been proven in this case. To show statutory or common law fraud in New Mexico, a plaintiff must establish: (1) a misrepresentation of fact; (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation; (3) intent to deceive and to induce reliance on the misrepresentation; (4) detrimental reliance on the misrepresentation; (5) proximate causation; and (6) damages. *Cain v. Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 97 (N.M. Ct. App. 2007).

---

[6] The parties devote extensive briefing to the issue of whether the mediation negotiations in question were confidential under the New Mexico Mediation Procedures Act, N.M. Stat. Ann. § 44-7B-1 to -6. In light of the Court's findings that the negotiations do not support the malicious abuse of process claim, it is unnecessary to resolve whether the negotiations may or may not be used as evidence against HLF.

THI cannot show justifiable reliance on HLF's alleged misrepresentations in this case. THI did not rely on the misrepresentations because it, in fact, refused to pay what it saw as an exorbitant settlement demand. Further, although THI may have suffered some damages as a result of litigating the Tracy lawsuit, the Court cannot find that the damages were a proximate cause of the alleged misrepresentations concerning Mr. Tracy's penis. First, as explained above, the lawsuit was founded on claims other than the "amputated penis" personal injury. Therefore, the alleged misrepresentation concerning Mr. Tracy's "amputated" penis HLF cannot be faulted for the entirety of the expense of litigating the lawsuit. Second, to the extent it suffered damages by filing suit, THI compounded its own damages. It is an undisputed fact that much of the length of the litigation in the Tracy lawsuit was caused by THI's insistence on litigating questions of personal jurisdiction for seven months, and that THI did not serve formal discovery requests on HLF until March of 2008. It was certainly THI's right to contest jurisdiction and conduct discovery as it felt necessary. However, THI cannot then lay the length of the entire Tracy lawsuit at HLF's doorstep. The expenses that THI incurred from the Tracy litigation cannot be characterized as damages flowing solely from the demand at the April 2008 settlement conference. In short, THI's allegations of extortion and fraud are simply misplaced.

To be clear, the Court today finds only that the malicious abuse of process tort does not encompass claims such as THI brings here, because the tort is construed very narrowly and presents the potential for serious abuse by litigants and their lawyers. *Fleetwood Retail Corp.*, 164 P.3d at 37. The Court does not, however, condone the inclusion of unfounded allegations in a complaint which are not supported by probable cause, or deliberately misrepresenting facts to an opposing party in informal communications or settlement negotiations. On the undisputed facts, THI clearly had a good faith factual basis to believe that HLF's conduct in the underlying

11

lawsuit was wrongful. But the evidence fails, as a matter of law, to support the claims alleged in the complaint. Such behavior is more appropriately addressed within the context of the underlying lawsuit – that is, the aggrieved party ought to seek sanctions against the offending party, either for signing pleadings without a good faith basis in law or fact, or for discovery violations. Conduct that is sanctionable will not necessarily form a basis for filing a malicious abuse of process lawsuit in a separate and independent action in federal court.[7]

## II.     Attorney Deceit

"If an attorney is guilty of deceit or collusion or consents thereto with intent to deceive the court, judge or party, he shall forfeit to the injured party, treble damages to be recovered in a civil action . . . ." N.M. Stat. Ann. § 36-2-17. New Mexico has very little case law interpreting this statute. HLF argues that there is no evidence establishing the firm's "intent to deceive," and THI argues that this Court should follow New York in adopting a liberal reading of the statute. The Court finds that both parties' arguments are incorrect, and that this claim must be dismissed as a matter of law on alternate grounds.

### A.     Intent

Although case law interpreting this statute is sparse, it is clear that "intent to deceive" is an element of this cause of action. THI argues that HLF "intended to deceive" THI and/or the New Mexico district court because the firm deliberately withheld evidence. As support for this

---

[7] Of course, attorneys face a very limited window in which they may file for sanctions, at least in federal court. *See Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) ("[T]he motions for sanctions should have been denied because they were not filed until after the district court had dismissed the complaint. . . . Service of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected." (internal quotation marks omitted)). This narrow construction, however, does not mean the malicious abuse of process tort is an effective substitute for sanctions.

claim, THI points to two pieces of evidence that HLF allegedly withheld: a photograph of Mr. Tracy's penis that was taken at the same time another photograph of his penis was disclosed before the April 2008 mediation conference, and a 2006 medical report by Dr. Milroy indicating that Mr. Tracy had not suffered an auto-amputation of his penis.

Two photographs of Mr. Tracy's penis were taken in April 2008 and provided to HLF. HLF then disclosed only one of the photographs to THI in preparation for the mediation conference, and THI did not discover that the other photograph existed until the filing of the instant lawsuit. The undisclosed photograph is very clear evidence that Mr. Tracy's penis had not been amputated. Attachment A to Mediation Statement (Doc. 64-21 at 6). The other photograph is taken from a different angle. Attachment B to Mediation Statement (Doc. 64-22 at 1). While the disclosed photograph does not fully support the allegation that Mr. Tracy's penis was amputated, it is certainly substantially more ambiguous than the undisclosed photograph.

Dr. Milroy, a urologist, issued a report after he examined Mr. Tracy's condition in May of 2006, which documented the continued existence of Mr. Tracy's penis. Despite that fact that in March of 2008, HLF represented that it had turned over all medical records pertaining to Mr. Tracy's condition, Dr. Milroy's report was never given to THI by HLF. In April of 2008, THI obtained a medical release from HLF and subpoenaed medical records pertaining to Mr. Tracy. It was only through this effort that THI obtained Dr. Milroy's report. HLF does not dispute that it possessed this report before filing suit, that it did not produce this report in discovery, and that it instead turned over a medical release after indicating that THI already had all relevant medical records in its possession. THI did not obtain this report in time for the April 2008 mediation conference.[8]

---

[8] HLF contends that THI "never sought the document in discovery until shortly before the settlement mediation, at which point [THI] readily obtained it." Motion for Summary

HLF's argument that there is no evidence that the firm "intended" to deceive THI or the district court, therefore, fails. There is undisputed evidence in the record from which a reasonable jury could infer that the firm deliberately withheld the evidence described above in order to mislead THI about the condition of Mr. Tracy's penis. The Court will, however, grant summary judgment to HLF on grounds not raised in its motion, as explained below.

**B.     Law on Attorney Deceit**

In a diversity case, New Mexico law must be ascertained and applied. Absent a statute or decision by the New Mexico Supreme Court, the task is one of predicting how that court would rule. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). All resources available, including decisions of other states and federal decisions and the general weight and trend of authority, may be considered. *See Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

THI argues that, in the absence of controlling New Mexico case law, this Court should adopt a decision from the New York Court of Appeals finding that intentional misrepresentation can support a claim for attorney deceit, even if neither the court nor the other party ever acted on the belief that the misrepresentation was true. *Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (2009). New York's attorney deceit statute is substantially similar to the statute in New Mexico, and is in fact the model for most attorney deceit statutes around the country. *See* Alex B. Long, *Attorney Deceit Statutes: Promoting Professionalism Through Criminal Prosecutions and Treble Damages*, 44 U.C. Davis L. Rev. 413, 447 (2010). However, as Professor Long explains at

---

Judgment at 13 (Doc. 81). Nonetheless, HLF does not actually dispute any of the facts described above. Given these undisputed facts, HLF's contention is a misleading characterization of the method which THI was obliged to use in order to obtain Dr. Milroy's report.

length, the *Amalfitano* case was a significant departure from the previous weight of authority interpreting attorney deceit statutes.

Professor Long observes that the majority approach of state courts has been to "interpret[] their attorney deceit statutes so as to limit the potential for liability." *Id.* at 449. Crucially for the purposes of this case, "[t]he most common method of limiting the reach of the statutes has been to hold that the statutes do not create a new cause of action but simply codify the common law fraud or misrepresentation tort while providing for treble damages." *Id.* (citing *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 666-67 (Ind. Ct. App. 2002); and *Love v. Anderson*, 61 N.W.2d 419, 422 (Minn. 1953)). Under this line of reasoning, "plaintiffs are still required to establish that they justifiably relied on an attorney's misrepresentations to their detriment." *Id.* at 450.

*Amalfitano* then took the attorney deceit doctrine in an entirely new direction. Prior to that case, in New York it had not been "clear from the plain language of [the attorney deceit statute] whether an attempted deceit is actionable under the statute." *Amalfitano v. Rosenberg*, 533 F.3d 117, 125 (2d Cir. 2008). After the Second Circuit certified this question to the state court, the New York Court of Appeals then clarified that attempted deceit – that is, intentional misrepresentation without inducing justifiable reliance – was actionable under New York's statute. This was, however, a significant departure from well established case law in other states. Further lessening its persuasive value, the case has not been followed – much less cited – by any court outside of New York.

The Court finds that New Mexico would most likely adopt the more restrictive majority approach, rather than the new liberal trend from New York. As additional support for this conclusion, a previous case from the District of New Mexico has also interpreted the attorney

deceit statute in a restrictive manner, albeit in a different context. In *Richter v. Van Amberg*, Tenth Circuit Judge Paul Kelly, sitting by designation on the United States District Court for the District of New Mexico, found that the statute reaches conduct of an attorney only when the attorney is actually acting as an attorney during the course of a judicial proceeding. 97 F. Supp. 2d 1255, 1260 (D.N.M. 2000) ("In my view, New Mexico would give effect to the limitation contained in the statute's language and follow the majority view."). This Court agrees with the reasoning behind Judge Kelly's opinion, and finds that in this context as well New Mexico would most likely limit the statute's reach and follow the majority view. Therefore, the Court holds that the attorney deceit statute is not an independent cause of action, but merely provides treble damages where an attorney has committed fraud otherwise actionable under the common law or statute. As explained above, THI has not shown that HLF committed fraud.

Although THI did not raise the issue of whether the attorney deceit statute provides an independent cause of action as grounds for summary judgment,

> [a] district court may grant summary judgment on a ground not formally raised in a summary judgment motion, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence. If a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte. A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position.

*Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (citations omitted) (internal quotation marks omitted). Here, THI was certainly on notice that it would need to prove a case of fraud for at least one of its arguments. *See* Response to Motion for Summary Judgment at 21 (Doc. 64) (acknowledging that "settlement negotiations, without evidence of extortion or other fraudulent behavior, cannot give rise to a procedural impropriety sufficient to meet the second

element of a MAP claim" and arguing that HLF "engage[d] in other fraudulent behavior").[9] THI did not sufficiently present evidence to support its fraud allegation for purposes of its malicious abuse of process claim, and similarly has not presented evidence of fraud for purposes of the attorney deceit claim. Therefore, the Court will grant summary judgment in HLF's favor because the evidence does not support the claim that HLF committed civil fraud.

## III. Civil Conspiracy

"[C]ivil conspiracy by itself is not actionable and must instead attach to the independent, unlawful acts alleged" in a plaintiff's complaint. *Deflon v. Sawyers*, 137 P.3d 577, 582 (N.M. 2006). Therefore, because summary judgment has been granted to HLF on the other two counts of the complaint, judgment on the cause of action for civil conspiracy must be granted to HLF as well.

Even if the other counts of the complaint were to survive, however, the civil conspiracy claim would still fail. HLF moves for summary judgment on the grounds that THI has no evidence that HLF or its individual attorneys conspired with anyone else to commit malicious abuse of process or attorney deceit. In response, THI does not identify the evidence that supports its claim of civil conspiracy, or even clarify who is supposed to have conspired with whom. It is simply unclear whether THI is alleging that HLF's attorneys conspired with each other, or whether they conspired with their client, to knowingly violate the law.[10] THI's response is limited to arguing that HLF committed attorney deceit and the tort of malicious abuse of process,

---

[9] In addition, THI's citation to *Amalfitano v. Rosenberg* raised the issue of how to interpret the attorney deceit statute and which state's law the Court ought to follow in the absence of New Mexico case law.

[10] The complaint alleges that "Defendants Harvey and Rael . . . agreed with one another and Mr. Tracy to file the Tracy Complaint without probable cause." Compl. ¶ 50 (Doc. 1). However, this is not sufficient to survive summary judgment where the pleadings inadequately develop the legal and factual basis for the claim.

17

which does not amount to an argument that its attorneys also committed conspiracy. THI's claim for civil conspiracy must fail.

## IV. Motion to Amend Answer

Defendants have filed a motion to amend their answer to assert a counterclaim and a third-party complaint (Doc. 95). Although this motion has neither a response nor a reply, it must be denied as moot in light of the Court's findings. The grant of summary judgment disposes of this case in full, and following the publication of this opinion, the Court no longer has subject-matter jurisdiction over this case.

## CONCLUSION

The conduct of Defendants in the course of their representation of Mr. Tracy in the original state court lawsuit may very well have justified the imposition of sanctions; however, such conduct, even viewed in the light most favorable to Plaintiff, fails as a matter of law to support an independent claim for malicious abuse of process or attorney deceit. Bad blood clearly exists between the parties and/or their lawyers. The malicious abuse of process tort is not reserved for feuding parties to go after each other using the U.S. court system.

**THEREFORE, IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 27) is GRANTED;

**IT IS FURTHER ORDERED** that Defendants' Motion to Amend the Answer to Assert a Counterclaim and a Third-Party Complaint (Doc. 95) is DENIED AS MOOT;

**IT IS FINALLY ORDERED** that Plaintiff's complaint is dismissed with prejudice, thus disposing of this case on its merits and in its entirety.

A Rule 58 Judgment will contemporaneously accompany this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE